## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KELLY GEORGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-00464-PRW |
| | ) | |
| COMMUNITY HEALTH CENTERS | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Community Health Centers, Inc.'s Motion for Summary Judgment (Dkt. 16), Plaintiff Kelly George's Response in Opposition (Dkt. 19), and Defendant's Reply to the Response (Dkt. 21). For the reasons given below, the Defendant's Motion for Summary Judgment is **DENIED**.

### *Background*

Community Health Centers, Inc. is a nonprofit medical organization that operates medical treatment facilities in the state of Oklahoma. In August of 2019, Kelly George applied to work at the Dorothy M. Smith Family Medical Center in Carney, Oklahoma, one of the medical centers operated by Community Health Centers. As part of her application, Ms. George submitted a résumé containing numerous false statements and inaccuracies. These false statements and inaccuracies were not detected at the time and Ms. George was hired as a community health worker and later promoted to Case Manager.

After various unrelated surgeries, Mrs. George was prescribed the opioid Oxycontin by one of her doctors. Mrs. George developed an addiction to this opioid prescription, consuming her entire supply shortly after each refill and experiencing withdrawals while waiting for the next refill. Ms. George did not inform Community Health Centers about her addiction to opioids or the effects the addiction was having on her life.

On June 3, 2020, at approximately 6:31 p.m., Ms. George sent a text message to her Community Health Centers supervisor, Obzinder Robinson. This text message stated:

> I dont really know how to go aboit [sic] this I know its all private . I need to go inpatient for 30days . I have to be there tonight . I need to start my fmla paperwork the hospital I am going to said they would help me but I know it will have to be started in the morning in human resources . I will be out of pocket . I love my job but I cant help anybody if I cant help myself . I got addicted to the pain medicine I am getting at pain management and it got out of hand . I am better than this and get beat it . I just hope I have a job to come back to and I need to officially go on fmla tomorrow. I have to be at the hospital by 8pm tonight . I know there is a certain amount of people you have to tell but I would appreciate the privacy .

After sending this text message, Ms. George checked into the rehabilitation program at Cushing Valley Hope Association. Dr. Robinson forwarded Ms. George's text message to Community Health Centers' Human Resource Director, Delois Anderson. At approximately 8:31 p.m., Dr. Robinson sent a text message to Ms. George, which stated:

> Good evening Hope all is well Due to the length of your employment with CHCOk you do not meet the criteria for FMLA. You must be employed a year. If you have any questions please contact me or human resource. Get better soon.

On July 6, 2020, Ms. George called Ms. Anderson to advise her that Ms. George had completed the addiction treatment program and to seek permission to return to work. Ms. Anderson placed Ms. George on hold and consulted with the Director of Community Health Centers. When Ms. Anderson returned to the call, she told Ms. George that Ms. George was free to re-apply for her old position. Ms. George did not reapply for her old position. On August 6, 2020, Community Health Centers sent Ms. George a letter that stated: "As you know, your employment with Community Health Centers of Oklahoma ended July 7, 2020."

Ms. George filed suit, raising two claims: (1) discrimination on the basis of a disability and failure to reasonably accommodate a disability, in violation of the Americans With Disability Act ("ADA") and the Oklahoma Anti-Discrimination Act ("OADA"); and (2) retaliatory termination due to a disability, in violation of the ADA and the OADA. Community Health Centers moved for summary judgment, Ms. George filed a response in opposition, and Community Health Centers filed a reply to the response.

### *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute

for trial before the fact-finder.[1] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[2] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[3] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[4] At the summary judgment stage, the Court views the facts[5] and makes all reasonable inferences in the light most favorable to the nonmoving party.

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record" that show "that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute," or by showing "that [the movant] cannot produce admissible evidence to support the fact."[6] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[7] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is

---

[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[4] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[5] *See Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

[6] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[7] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

whether the evidence presents a sufficient disagreement to require submission to a jury or whether is so one-sided that one party must prevail as a matter of law."[8]

### *Discussion*

Community Health Centers argues that the record contains no genuinely disputed material facts and that, as a matter of law, Community Health Centers is entitled to summary judgment on both the discrimination and retaliation claims. It also argues that Ms. George's résumé fraud bars any recovery as a matter of law, even if there was discrimination or retaliation. The Court addresses and rejects each argument in turn.

<u>ADA/OADA Discrimination</u>

The ADA prohibits employment discrimination against qualified disabled employees, and the OADA similarly prohibits employment discrimination against the disabled.[9] The protections provided by the OADA are "co-extensive with the protections provided by federal law under the ADA," so if Ms. George's "federal discrimination claims fail," her OADA claim fails as well.[10]

---

[8] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[9] *See Hamilton v. Oklahoma City University*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012).

[10] *Id.* (quoting *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246–47 (N.D. Okla. 2010)).

Since Ms. George has not presented direct evidence of discrimination[11] and relies instead on indirect and circumstantial evidence, a special burden-shifting framework applies.[12] Ms. George bears the initial burden of establishing a prima facie case of discrimination, which shifts the burden to Community Health Centers to articulate a legitimate, nondiscriminatory reason for the termination, which shifts the burden back to Ms. George to show that the offered justification is pretextual.[13] In order to establish a prima facie case of discrimination, Ms. George must demonstrate that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer . . . because of that disability."[14]

Here, all offered arguments focus exclusively on the first step of the burden-shifting framework. Community Health Centers contends that Ms. George cannot establish the prima facie case for either the first or second of these required elements, arguing that she is not a qualified individual with a disability and that she never requested a reasonable accommodation.[15]

---

[11] *See Kierl-Allen v. Salvation Army Ark./Okla. Div.*, 2021 WL 4495909, at *3 (W.D. Okla. Sept. 30, 2021) (defining "direct evidence" as "oral or written statements on the part of a defendant showing a discriminatory motive").

[12] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (10th Cir. 1973).

[13] *Id.*; *see also EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).

[14] *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015).

[15] In its reply brief to Ms. George's response to the motion for summary judgment, Community Health Centers also argued for the first time that Ms. George "failed to carry her burden . . . on each element" and, with regards to the third element of the prima facia case, claimed "George did not suffer any discrimination by [Community Health Centers]

1.    Element One: Qualified Individual with a Disability

42 U.S.C. § 12102 defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities," a "record of such impairment," or "being regarded as having such an impairment."[16] The statute also instructs that the definition of disability should "be constructed in favor of broad coverage" and "to the maximum extent permitted."[17] A subsequent provision of the ADA—subsection 12114(a)—provides that an employee cannot be "a qualified individual with a disability" if the employee is "currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use."[18]

However, Congress also created a "safe harbor" to protect recovering illegal drug users who were no longer "currently engaging" in the illegal use of drugs. Subsection 12114(b) provides that an employee who "(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has

---

because of her disability." Reply (Dkt. 21), at 3. However, in its actual motion, Community Health Centers never present arguments on the absence of discrimination. The Court generally will not consider arguments raised for the first time in a reply brief, particularly where such arguments could have been made in the first instance. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009); *Gray v. Acadia Healthcare Co.*, 2020 WL 9597903, at *2 n.2 (E.D. Okla. Oct. 1, 2020). Ms. George briefly addressed the third element and established the necessary prima facie case that she suffered discrimination after Community Health Centers did not recognize her alleged status or grant the requested accommodation and subsequently terminated her while or after she sought treatment. *See* Response (Dkt. 19), at 18, 20–21. For the purposes of summary judgment, this suffices to carry her burden on the third element.

[16] 42 U.S.C. §§ 12102(1)(A)–(C).

[17] *Id.* § 12102(4)(A).

[18] *Id.* § 12114(a).

otherwise been rehabilitated successfully and is no longer engaging in such use" or "(2) is participating in a supervised rehabilitation program and is no longer engaging in such use" may still be a qualified individual with a disability.[19]

Thus, as the Tenth Circuit has recognized, "the status of being an alcoholic or illegal drug user may merit [ADA] protection."[20] But achieving ADA protection requires two steps.[21] First, the employee must demonstrate that the addiction or use of illegal drugs is an "impairment that substantially limits one or more major life activities" so as to be a qualifying disability. Second, the employee must demonstrate that they are not "currently engaging" in the use of illegal drugs and therefore qualify for § 12114(b)'s safe harbor protection.

The Tenth Circuit has established that an employee is "currently engaging" if "the drug use was sufficiently recent to justify the employer's reasonable belief that the drug abuse remained an ongoing problem."[22] But this is no bright-line rule. An employee's "eligibility for the safe harbor must be determined on a case-by-case basis, examining whether the circumstances of the plaintiff's drug use and recovery justify a reasonable

---

[19] *Id.* § 12114(b).

[20] *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1185 (10th Cir. 2011) (quoting *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 609 (10th Cir. 1998)).

[21] *See Nielsen*, 162 F.3d at 610 (stating that an "individual who falls under one of the subcategories of 42 U.S.C. § 12114(b) is not automatically a 'qualified person with a disability' for purposes of protection under the ADA," since they also "must prove they suffer from a 'disability' as that term is defined in 42 U.S.C. § 12101(2)").

[22] *Mauerhan*, 649 F.3d at 1187 (quoting *Zenor v. El Paso Healthcare Sys. Ltd.*, 176 F.3d 847, 856 (5th Cir. 1999)).

belief that drug use is no longer a problem."[23] "Rather than focusing solely on the timing of the employee's drug use," the Court must "consider whether an employer could reasonably conclude that the employee's substance abuse prohibited the employee from performing the essential job duties."[24] The Court also may examine factors such as "the severity of employee's addiction," "the relapse rates for whatever drugs were used," "the employer's applicable job and performance requirements," and "the employee's past performance record," among others.[25] Thus, participation in a drug rehabilitation program merely opens the door to the safe harbor. The protection of the safe harbor depends on a totality-of-the-circumstances inquiry into whether the employer had a reasonable belief of ongoing drug use or relapse and a reasonable belief that the employee would be unable to perform their job.

In the leading ADA safe harbor case—*Mauerhan v. Wagner Corp.*[26]—the Tenth Circuit affirmed summary judgment denying safe harbor protection after an employee completed a thirty-day drug rehabilitation program, but the employer still had reasonable concerns about the employee's potential ongoing drug use. Here, Community Health Centers cites *Mauerhan* and argues that this case should reach the same result. But the facts of *Mauerhan* are materially different. In *Mauerhan*, the employee offered "guarded"

---

[23] *Id.* at 1188 (citing *Teahan v. Metro-North Commuter R.R.*, 951 F.2d 511, 520 (2d Cir. 1991)).

[24] *Id.* (quoting *Zenor*, 176 F.3d at 857).

[25] *Id.* (first citing *Zenor*, 176 F.3d at 857, then quoting *Teahan*, 951 F.2d at 520).

[26] 649 F.3d 1180 (10th Cir. 2011).

responses to the employer's inquiries into his recovery and indicated "at least ninety days of recovery was necessary to ensure significant improvement in his condition." It appears true that Congress intended employers to be "entitled to seek reasonable assurance that no illegal use of drugs is occurring or has occurred recently enough so that continuing use is a real and ongoing problem," and the employer's reasonable belief that drug abuse persisted was what scuttled the safe harbor's applicability in *Mauerhan*.

But in this case, Community Health Centers never sought reasonable assurances. No evidence presented by Community Health Centers indicates that it contemplated the issue of ongoing drug use or relapse post-rehabilitation treatment, or that it had any reasonable belief that Ms. George would be unable to perform her essential job duties moving forward. Indeed, by inviting Ms. George to reapply for her position, Community Health Centers indicated it had no fears that Ms. George was not fully rehabilitated or could not perform her duties.

When viewing the evidence presented and considering the facts in the light most favorable to Ms. George, the Court finds Community Health Centers has not rebutted Ms. George's prima facie case or proven entitlement to judgment as a matter of law. Ms. George has presented evidence and arguments sufficient for fact-finders to conclude that she is a qualified individual with a disability who is within the safe harbor's protections. To the first step, she has demonstrated that her use of illegal drugs substantially limited a major life activity: namely, the ability to work.[27] To the second step, Ms. George has

---

[27] *See* 42 U.S.C. § 12102(2) (defining "major life activities" to including "concentrating, thinking, communicating, and working"); *see also Rakity v. Dillon Cos., Inc.*, 302 F.3d

demonstrated that her employment was terminated either during her participation in a rehabilitation program or after she had successfully completed a rehabilitation program,[28] and Community Health Centers did not seek assurances that she was not still using drugs or that she was competent to perform her duties prior to terminating her. Thus, the record is currently sufficient for a fact-finder to conclude that Ms. George was a qualified individual with a disability and that the protections of the safe harbor applied to her case.[29]

2.    Element Two: Reasonable Accommodation

For the second element of Ms. George's discrimination claim, she must demonstrate that she "is qualified, with or without reasonable accommodation, to perform the essential functions of the job held."[30] In its motion for summary judgment, Community Health

---

1152, 1158 (10th Cir. 2002). Community Health Centers did not contest in its motion for summary judgment the assertion that Ms. George's illegal drug use was a qualifying disability that substantially limited a major life activity, instead focusing its arguments on the second step of the safe harbor's applicability.

[28] At this point of the proceedings, the Court notes that the presented facts support two different potential termination points: either before July 6, 2020 (as indicated by Ms. Anderson's statement on the telephone that Ms. George could reapply to her old position), or on July 7, 2020 (as indicated by letter dated August 6, 2020, stating effective termination of July 7).

[29] Since Ms. George has presented facts sufficient for a fact-finder to conclude that she had a disabling impairment within the meaning of 42 U.S.C. § 12102(1)(A), the Court need not address the alternate argument that Community Health Centers "regarded" her as having such an impairment within the meaning of 42 U.S.C. § 12101(1)(C). However, the decision not to address the alternate route to establishing the existence of a disability does not mean that this route is foreclosed should the case proceed to trial.

[30] *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015).

Centers claimed that Ms. George cannot establish this second element because "she did not request a reasonable accommodation."[31]

To begin, whether Ms. George requested a reasonable accommodation remains genuinely disputed and not proper for resolution at this time. Ms. George maintains that her June 3rd text message served as the request for an accommodation. The Tenth Circuit has made clear that when requesting accommodations, an employee "may use 'plain English,'"[32] "need not use magic words,"[33] and "need not mention the ADA or use the phrase 'reasonable accommodation.'"[34] Depending on the nature of the circumstances, additional unpaid leave can be a reasonable request.[35] And even if not reasonable under these circumstances, a qualified individual's valid request for accommodation triggers "the

---

[31] Mot. for Sum. J. (Dkt. 16), at 14. Community Health Centers offered no further argument on the supposed second element failure beyond this bare conclusion.

[32] *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (en banc) (quoting EEOC Interpretive Guidance, 29 C.F.R. 1630, at 8 (1998)).

[33] *Id.*

[34] *Id.* (quoting EEOC Interpretive Guidance, at 8).

[35] *See Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) ("Examples of possible accommodations include 'permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment.'") (quoting 29 C.F.R. pt. 1630, app'x); *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1272 (10th Cir. 1998) (same); *Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1168 (10th Cir. 1996) (same); *see also Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 677–78 (10th Cir. 2021) ("[Plaintiff] provided an expected end date for her leave request and indicated that the proposed return date was tied directly to her recovery. . . . The request for leave was therefore not indefinite and, for summary judgment purposes, was plausibly reasonable.").

employer's obligation to participate in [an] interactive process"[36] of determining what would be a reasonable accommodation.

But more importantly, whether Ms. George indeed requested a reasonable accommodation is immaterial to this second element of the prima facie test. The Court uses a two-step inquiry for this element: asking first whether Ms. George could perform the essential functions of her job, and second, if not, whether any reasonable accommodation by the employer would enable her to perform those functions.[37] In its motion, Community Health Centers presented no arguments that Ms. George was not qualified to perform the essential functions of her job.[38] On the other hand, Ms. George has argued that she was qualified and capable to perform the essential functions of her job and that, had she received the thirty-days-off accommodation, she would have been able to return and fully perform the essential functions of her job. Ms. George has supported these arguments by pointing to the depositions of Dr. Robinson and Ms. Anderson, who both testified that Ms. George

---

[36] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) (quoting *Woodman v. Runyon*, 132 F.3d 1330, 1345 (10th Cir. 1997); *see also Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 331 n.4 (4th Cir. 2014) ("[A]n employee's accommodation request, even an unreasonable one, typically triggers an employer's duty to engage in an 'interactive process' to arrive at a suitable accommodation.").

[37] *See Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1267 (10th Cir. 2015) (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1182 (10th Cir. 2003)).

[38] In its reply to Ms. George's response to the motion for summary judgment, Community Health Centers makes a single conclusory statement that "George was not disabled as defined by the ADA, nor was she qualified with or without reasonable accommodations." Reply (Dkt. 21), at 3. However, since Community Health Centers both made this claim for the first time in its reply brief and failed to support the conclusory statement with any arguments, the Court considers Ms. George's arguments on her qualification to perform her job to be unopposed, for purposes of this motion.

had been satisfactorily performing the essential functions of her job.[39] Since Community Health Centers failed to meaningfully contest these assertions, the Court finds that Ms. George has established a prima facie case that she was qualified to perform the essential functions of her job when assisted by the alleged requested accommodation.

Thus, Ms. George has affirmatively presented a prima facia case for discrimination and supplied evidence and arguments that would permit a fact-finding jury to find all three required elements of discrimination in her favor.[40] While satisfaction of this prima facia case normally shifts the burden back "to the employer to articulate a 'legitimate, nondiscriminatory reason'" for the termination,[41] Community Health Centers declined to advance any such arguments in its motion. Accordingly, the Court finds that Community Health Centers is not entitled to judgment as a matter of law on the claims of ADA and OADA discrimination.

_ADA/OADA Retaliation_

In addition to prohibiting discrimination, the ADA prohibits discriminatory retaliation. As with a discrimination claim, here both the ADA and OADA claims require

---

[39] _See_ Robinson Deposition (Dkt. 19, Ex. 3), at 35:1–9 (Q: "Prior to receiving this text . . . . [s]he was meeting her essential job duties?" A: "Yes."); Anderson Deposition (Dkt. 19, Ex. 2), at 13:23–25 (Q: "Do you know how Ms. George's performance was as a caseworker? Did she meet expectations?" A: "Yes.").

[40] _See_ discussion of the third element _supra_ n.11.

[41] _Lincoln v. BNSF Railway Co._, 900 F.3d 1166, 1193 (10th Cir. 2018) (quoting _McDonnell Douglas Corp. v. Green_, 411 U.S. 792, 802 (1973)).

the same three elements and may therefore be considered simultaneously.[42] To make a prima facie case of retaliation, Ms. George must demonstrate that "she (1) engaged in protected activity, (2) suffered a material adverse action, and (3) a causal connection exists between the protected activity and the adverse action."[43] As with discrimination, for a retaliation claim presented without direct evidence of discrimination is considered under the prima facie burden-shifting framework.[44]

Community Health Centers argues that Ms. George did not engage in protected opposition discrimination since, in its eyes, she did not request an accommodation and so she fails the first element of the prima facie case.[45] The Tenth Circuit has established that "[a]n employee's request that his employer provide him an accommodation for a disability constitutes a protected activity for purposes of advancing an ADA retaliation claim."[46] The same request for accommodation can therefore support both a discrimination claim and a retaliation claim.[47]

---

[42] *See Tilghman v. Kirby*, 662 F. App'x 598, 603 (10th Cir. 2016) (analyzing an OADA retaliation claim in light of the same three elements as an ADA retaliation claim).

[43] *See Herrman v. Salt Lake City Corp.*, 21 F.4th 666, 679 (10th Cir. 2021) (quoting *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016)).

[44] *Id.* ("Where a plaintiff relies on circumstantial evidence to establish his claim, the *McDonnell Douglas* burden-shifting framework applies.").

[45] *See* Mot. for Summ. J. (Dkt. 16), at 17–20.

[46] *Lincoln*, 900 F.3d at 1209.

[47] *See id.* ("The first protected activity taken by both Appellants was their accommodation request letters on October 1, 2012. Thus, the same position applications that comprised their ADA failure to accommodate claims also comprise their ADA retaliation claims.").

Community Health Centers bases its argument on the contention that Ms. George's June 3rd text message did not constitute a request for accommodation. First, it argues that the text message did not place Community Health Centers on notice that Ms. George had a qualified disability or in need of accommodation. Second, it argues that Ms. George's reference to the Family & Medical Leave Act ("FMLA") in the text message negated any alternative request for a reasonable accommodation under the ADA.

However, as discussed in the previous section, there remains a genuine dispute of material fact on whether Ms. George's June 3rd text message communicated enough information to qualify as a request for accommodation. Again, it is well-established that Ms. George need not use magic words, mention the ADA, or use the phrase "reasonable accommodation" when requesting an ADA accommodation.[48] Requests in "plain English" are sufficient, so long as Ms. George "provid[ed] notice to the employer of [her] disability and any resulting limitations" and "convey[ed] to the employer a desire to remain with the company despite [] her disability and limitations."[49] In this respect, Ms. George has carried her prima facie burden and established a genuinely disputed material fact sufficient to prove this first element of retaliation. By discussing Ms. George's addiction to prescription opioids, the thirty-day treatment program, and the "hope I have a job to go back to," the June 3rd text message contains information relating to each necessary component of a valid request for accommodation: the alleged disability, the limitations imposed by the disability,

---

[48] *See Smith*, 180 F.3d at 1172.

[49] *Id.*

and a desire to remain with the company. From this evidence, a rational jury could find that Ms. George validly placed Community Health Centers on notice of her disability, requested an accommodation, and expressed a desire to remain employed with the company.

Neither of Community Health Center's two arguments to the contrary rebuts this prima facie case. First, once Dr. Robinson received the June 3rd text message and relayed the message to Ms. Anderson, Community Health Centers was on notice that Ms. George had a potential qualifying disability and was seeking an accommodation and continued employment. And second, Community Health Centers has yet to identify a legal principle indicating that Ms. George's spare reference to the FMLA absolutely foreclosed the possibility that her June 3rd text could also be a request for an ADA accommodation. Indeed, some courts have held that a request for FMLA benefits qualifies also qualifies as a request for ADA accommodation.[50]

Therefore, Community Health Centers has not rebutted the genuine dispute of material fact or overcome Ms. George's prima facie case of retaliation. Additionally, Ms. George presented adequate arguments to establish her prima facie case on the second and third elements of retaliation and Community Health Centers did not dispute these

---

[50] *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156–57 (3d Cir. 2017) ("We recognize that a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA . . . ."); *see also Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 n.3 (D.C. Cir. 2020) (offering the "more modest[]" reading that "a request can trigger both the FMLA and the ADA through language that independently satisfies the requires of both statutes").

elements.[51] Community Health Centers did not address the shifted burden or present evidence of a legitimate, non-pretextual reason for the termination. The Court therefore concludes that Ms. George has satisfactorily established her prima facie case of retaliation and that Community Health Centers has not demonstrated entitlement to judgment as a matter of law on this claim.

*Fraudulent Employment Application & After-Acquired Evidence*

Finally, Community Health Centers contends that even if there was discrimination and retaliation in violation of the ADA and OADA, it is entitled to judgment as a matter of law due to the after-acquired evidence of Ms. George's fraudulent résumé and work experience submitted during her original application for employment. To support this conclusion, Community Health Centers cites the Tenth Circuit's decision in *Summers v. State Farm Mutual Automobile Insurance Company*.[52] There the Circuit held that even if an employee was terminated for discriminatory reasons, after-acquired evidence of the employee's material fraudulent misstatements made while employed precluded any

---

[51] Where "the parties do not dispute" a plaintiff's plausible prima facie case on some elements, "the district court [may] assume[]" that the prima facie burden has been met. *See Herrmann*, 12 F.4th at 679. Ms. George has established a prima facie case of a material adverse action, the termination of her employment, and a plausible causal connection between her request for accommodation and the termination. The Community Health Centers offers a brief contention that Ms. George fails the third element—causal connection—but wholly couches this argument as a subsidiary of its argument on the first element by contending that there can be no causal connection without the first element's protected opposition to discrimination. With no independent arguments on the third element and considering the conclusion reached on the first element, the Court accepts Ms. George's arguments on the third element as sufficient to satisfy her prima facie burden. *See* Response (Dkt. 19), at 23.

[52] 864 F.2d 700 (10th Cir. 1988).

potential recovery and resulted in summary judgment for the employer. However, as Ms. George correctly observes, the Supreme Court abrogated *Summers* and the after-acquired evidence doctrine, holding in *McKennon v. Nashville Banner Publication Company*[53] that after-acquired evidence of wrongdoing may not bar relief for employment discrimination.[54] Under this rule, while evidence of Ms. George's wrongdoing relating to the employment application may be taken into account when fashioning the "appropriate remedial action,"[55] this after-acquired evidence no longer entitles Community Health Centers to judgment as a matter of law.[56]

## Conclusion

Ms. George has presented evidence and arguments sufficient to establish at least a prima facie case that Community Health Centers discriminated and retaliated against her

---

[53] 513 U.S. 352 (1995).

[54] *Id.* at 358 ("It would not accord with [the purposes of various anti-discrimination statutes, including the ADA] if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act.").

[55] *Id.* at 361.

[56] *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 554 (10th Cir. 1999) ("Under *McKennon*, information that an employer learns after it has discharged an employee is not relevant to the determination of whether an employer violated Title VII because it necessarily played no role in the actual decision."); *see also Perkins v. Silver Mountain Sports Club & Spa, LLC*, 557 F.3d 1141, 1145–47 (10th Cir. 2009) (applying the *McKennon* rule to an ADEA claim). Although it appears that the Tenth Circuit has yet to confront the question of applying the *McKennon* rule to ADA claims, other circuit courts of appeal have uniformly done so. *See, e.g.*, *Risk v. Burgettstown Borough*, 364 F. App'x 725, 730 (3d Cir. 2010); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.d 558, 563 (5th Cir. 1998); *Jones v. Nissan N. Am., Inc.*, 438 F. App'x 388, 405 (6th Cir. 2011); *O'Neal v. City of New Albany*, 293 F.3d 998, 1003–04 (7th Cir. 2002); *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1129–30 (9th Cir. 2020); *Lewis v. City of Union City*, 918 F.3d 1213, 1225–26 (11th Cir. 2019).

in violation of the ADA and the OADA. Community Health Centers has failed to conclusively rebut any element of Ms. George's prima facie case—on each contested point, Ms. George has demonstrated a genuine dispute of material fact that a jury could resolve in her favor. Community Health Centers likewise did not present arguments on any legitimate, nondiscriminatory reason for the termination, nor did it present arguments on any currently valid affirmative defense. Accordingly, Community Health Centers is not entitled to judgment as a matter of law and its motion for summary judgment is **DENIED.**

**IT IS SO ORDERED** this 8th day of March 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE